**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

**KRISTINE TORVIK,**

        **Plaintiff,**

**v.**                                           **Case No. 2:08-CV-474-FtM-29DNF**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

        **Defendant.**
_____/

# OPINION AND ORDER[1]

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration (the Commissioner) denying her claim for disability and disability insurance benefits (DIB) pursuant to 42 U.S.C. § 405(g). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memoranda. For the reasons set forth below, the Court finds that the Commissioner's decision is due to be **REVERSED AND REMANDED.**.

**I. SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
AND STANDARD OF REVIEW**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated September 25, 2008. (Doc. #11).

42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On September 9, 2004, the Plaintiff filed an application for disability and disability insurance benefits alleging an onset date of September 1, 2004. [Tr. 20]. A video hearing was held before Administrative Law Judge ("ALJ") Dores D. McDonnell, Sr. , who presided from Tampa, Florida. [Tr. 20, 409]. In his decision dated March 8, 2007, the ALJ denied benefits, finding the Plaintiff not disabled. [Tr. 20-26]. The Plaintiff filed a request for review of the hearing decision and on April 30, 2008, the Appeals Council denied the request for review. [Tr. 5-7]. The ALJ's decision became the final decision of the Commissioner. Therefore, this decision is now ripe for review under the Social Security Act, 42 U.S.C. § 405(g).

The Decision of Administrative Law Judge McDonnell dated March 8, 2007, denied the Plaintiff's claims for disability or disability insurance benefits. At Step 1 the ALJ found the Plaintiff had not engaged in substantial gainful activity since September 1, 2004, her alleged disability date. At Step 2 the ALJ found that the Plaintiff has the following severe impairments: Morton's neuroma bilateral feet (tumors along the nerve pathways of the metatarsals of both feet with the primary pain in the ball of the feet). The Plaintiff alleges anxiety and depression and the record indicates that the Plaintiff has an adjustment disorder with mixed anxiety and depressed mood. [Tr. 22]. The ALJ found the Plaintiff's mental impairment to not limit the Plaintiff's ability to perform basic work-related activities on a durational basis and, is thus considered it to be

"non-severe" as defined in the regulations. [Tr. 23]. The ALJ found that the Plaintiff is capable of performing her past relevant work and that this work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity ["RFC"] of sedentary. [Tr. 25]. Additionally, Vocational Expert, Gary Maisel, testified at the hearing. At Step 3 the ALJ found the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 4041525 and 404.1526). At Step 4 the ALJ determined the Plaintiff was able to perform her past relevant work as a credit manager, loan officer and receptionist and is therefore not disabled. [Tr. 22]. . At Step 5 the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity to determine that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. [Tr. 21]

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     REVIEW OF FACTS AND CONCLUSIONS OF LAW

### A.     BACKGROUND FACTS:

The Plaintiff was born on December 30, 1958, and was 48 years old at the time of the ALJ's decision. The Plaintiff completed high school and has past work experience as a credit manager, loan officer and receptionist. [Tr. 25]. The Plaintiff alleges disability beginning on September 1, 2004, due to nerve tumors that resulted in five surgeries on her left foot and six surgeries on her right foot. The Plaintiff alleges that she is in constant pain, uses a cane most of the time, uses a scooter when shopping, uses narcotic analgesics, and topical creams once per day to numb her feet to alleviate the pain. The Plaintiff testified she needs medication to sleep and medication for anxiety (due to her mother's death several years before and stress). [Tr. 24] After reviewing the medical evidence and the Plaintiff's testimony, the ALJ found that the Plaintiff had the following severe impairment: Morton's neuroma on both feet and adjustment disorder with mixed anxiety and depressed mood. [Tr. 22].

The Plaintiff was treated by D. Blaise M. Kovaz for anxiety and sleep deprivation December 2002 through March of 2003. [Tr. 163-167]. The Plaintiff was seen by Dr. Narmo Ortiz's between April 2003 and July 2003 for foot pain. [Tr. 132-143]. The record shows that the Plaintiff had undergone a neuroma excision and suffered from past osteomyelitis of her fourth toe. The Plaintiff was diagnosed with capsulitis bilateral of the second through fifth phalangeal joint of both feet and hammertoe of the bilateral fifth toes. The Plaintiff has received anesthetic blocks, cortisone injections and was prescribed custom orthotics. Throughout the record the Plaintiff reports pain in the balls of her feet. The Plaintiff received a second alcohol sclerosing injection into the left and right second interspace and on May 28, 2003, the Plaintiff was given a third injection. [Tr. 140]. The Plaintiff was started on Percocet.

The Plaintiff underwent surgery on July 7, 2003. Dr. Ortiz surgically removed the neuroma of the left and right foot. Diagnoses: "[N]euromas of second intermetatarsal space right and left foot and bursitis of the second and third metatarsophalageal joints of both feet. The Plaintiff continued to experience pain at the surgical site. [Tr. 128-131, 134].

Dr. Steven Holberg, a foot and ankle surgeon treated the Plaintiff between August 2003 and September of 2004. The Plaintiff went to Dr. Holberg on August 13, 2003, with bilateral foot pain in the balls of her feet. The Plaintiff described throbbing type pain and said it seemed to be worse on the left than on the right. The Plaintiff advised that her condition became worse after she was on her feet for awhile. The Plaintiff complained of severe pain. Dr. Holberg diagnosed the Plaintiff with Morton's Neuroma of the left third toe and prescribed Panlor. The Plaintiff was referred for an MRI of both feet. [Tr. 195-237, 228-229].

The MRI's taken on August 14, 2003, revealed post-surgical changes between the proximal phalanges and metatarsal heads of the second and third toes, and Morton's Neuroma was not ruled out. Also there was dorsal subcutaneous edema consistent with cellulitis or previous trauma and degenerative changes at the first MTP joint. After the Plaintiff's symptoms worsened, she was referred for exploratory surgery. [Tr. 236-237].

Dr. Holberg performed surgery on the Plaintiff on September 3, 2003. The Plaintiff underwent exploration and excision of the remaining nerve tissue/neuroma, third space on the right and left feet and excision of plantar skin lesion of the right foot. Post-Operative Diagnosis: "[P]ossible remaining nerve tissue third space, both feet." On October 8, 2003, the Plaintiff reported severe bilateral recurrent burning. [Tr. 234-235, 219-220]. The Plaintiff was referred for physical therapy and prescribed Bextra. The Plaintiff's prescriptions of Darvocet N-100, Napsylate and Percocet were refilled. [Tr. 216]. The record reveals that the Plaintiff showed very little improvement and on November 12, 2003, the Plaintiff was diagnosed with new Morton's Neuroma of the second space bilaterally. On November 19, 2003, the Plaintiff underwent another surgery to remove the bilateral Morton's Neuroma of the second space. [Tr. 219-220, 216, 230]. The pathology report showed, "[l]eft second interspace neuroma and right second interspace chronic synovitis with fibrinoid deposits."

The Plaintiff continued to experience pain even into July 19, 2004. The Plaintiff tried foot padding which offered slight relief but she continued to experience the severe burning sensation on the balls of both feet. The Plaintiff was given injections for the pain but the pain and numbness continued. When the steroid injections did not help the Plaintiff was started on Neurontin. [Tr.

199-200, 203-204, 205-206]. The Plaintiff was diagnosed with neuralgia, neuritis and radiculitis on September 23, 2004. The Plaintiff was prescribed Vicoden and was referred for "anodyne" physical therapy. [Tr. 197-198].

The Plaintiff was examined by Dr. Bruce Crowell on November 2, 2004, at the request of the state agency. The Plaintiff reported the five surgeries on her left foot and the six on her right. The Plaintiff opined that she was unable to walk any distance and had a handicapped sticker. The Plaintiff said she wears flip-flops while showering and cannot stand any length of time. Upon examination, the Plaintiff walked with a shuffling gait, used a cane and appeared to be in pain. The Plaintiff admitted to symptoms of anxiety and occasional depressed moments because of the constant pain. DIAGNOSIS: "[A]djustment disorder with mixed anxiety and depressed mood." [Tr. 246-248].

The Plaintiff was treated from October 2004 through March 2006 by Dr. Neil Schultz (at the request of Dr. Holberg). Again the Plaintiff reported being unable to work due to the pain and was limited doing any housework or shopping. Upon examination, there were surgical scars on both feet which were tender. DIAGNOSIS: [P]olyneuropathy, bilateral feet post-surgical. The Plaintiff began treatment with Lidoderm patches and Vicoden ES. The Plaintiff had a reaction to the patches so was unable to continue with the Lidoderm patches. [Tr. 268].

The Plaintiff reported to Dr. Schultz on January 4, 2005, that there was no improvement; she was staying off her feet all day and that she did not want the narcotics increased due to the side effects. The Plaintiff was continued on Percocet and advised to continue to apply the Lidocaine cream and wrap her feet in cellophane. Dr. Schultz found the Plaintiff to be totally disabled and unable to work. [Tr. 263-264].

On March 25, 2005, Dr. Schultz prepared a disability evaluation on the Plaintiff by letter and a Physical Residual Functional Questionnaire. Dr. Schultz found the Plaintiff to be "[Totally incapacitated by her foot pain to the point of being unable to ambulate even for short periods of time or to stand for periods of greater than 5 minutes at a time, thus requiring the use of a motorized scooter. Her sleep habits are also disrupted by pain 2-3x a night with a subsequent impact on her activities of daily living." The Plaintiff's medications consist of: "[O]xyContin, Percocet, Ketoprofen ointment, Gabapentin, ointment, Lidocaine, Amitriptyline and Ketamine." "[I]MPRESSION: Peripheral neuropathy bilateral feet status post-surgeries." "[R]ECOMMENDATIONS: 1. The patient will require periodic follow-up by Podiatry; 2. She will require long-term medications in the form of topical medications to control the neuropathy, as to Ketoprofen, Gabapentin, Lidocaine, Amitriptyline, Catamenia, as discussed in "medications." Also, Percocet and OxyContin as discussed under "medications" to control the neropathic pain; 3. It is my professional opinion as a Board Certified and Physical Medicine and Rehab Specialist, Kristine. Torvik is permanently and totally disabled and incapable of any gainful employment." [Tr. 307-313].

The physical residual functional questionnaire reaffirmed that the Plaintiff had pain in both feet and toes; that her prognosis was poor and that her impairments had lasted or could be expected to last at least twelve months and that she was not a malingerer. Dr. Schultz opined that the Plaintiff's emotional factors contributed to the severity of her symptoms and functional limitations. The Plaintiff was found to be incapable of low stress jobs because of the pain and being unable to walk. The Plaintiff could only sit, stand and walk less than two hours due to the

pain. Dr. Schultz found that the Plaintiff would require breaks every thirty minutes, would need to elevate her feet and require a cane or assistive device in standing and walking. The Plaintiff would never to able to lift more than ten pounds and could not stoop or crouch at all. Dr. Schultz also conceded her impairment would only produce bad days and she was disabled.

The record documents that the Plaintiff's pain continued and she was requiring Percocet at night for the break through pain (April 2005). [Tr. 305]. The Plaintiff was continued on Oxycontin and the Percocet dose was increased. In May 2005, with the pain increasing, the Oxycontin dose was increased and she was continued on Percocet, Ambien and Lodocaine cream. [Tr. 304]. In June of 2005, Cymbalta was added for sleep.

In March of 2006, the Plaintiff injured her ankle. Dr. Holberg treated her for ankle pain from March 2006 through November 2006. The Plaintiff's pain continued and she was still using her orthosis walker. MRI revealed a probable tear of the ATF ligament. The Plaintiff was given an ankle stirrup brace and underwent a steroid injection in the right ankle. [Tr. 314-337].

On November 9, 2006, the Plaintiff underwent surgery for instability of a joint, ankle, and foot on the right and right ankle strain. She was prescribed a fracture orthosis walker.

Between June 2006 and January 2007, the Plaintiff was examined by Dr. Schultz who noted that the Plaintiff "was significantly impaired in her mobility, at times using a scooter and a cane." [Tr. 331]. The Plaintiff remained in severe pain. On January 3, 2007, due to the continued pain the Plaintiff was placed on Dilaudid and was advised that referral to a specialist was required. [Tr. 341].

It should be noted that at the hearing held on January 30, 2008, vocational expert, Gary Maisel testified. The ALJ asked Mr. Maisel, "[I]f I were to conclude that the Claimant's testimony here today is entirely credible, before the evidence of record, what would your conclusion be?" Mr. Maisel replied, "[I] would say there'd be no occupation she can perform."

**B.     SPECIFIC ISSUES:**

    **1.     THE COMMISSIONER'S RESIDUAL FUNCTIONAL CAPACITY FOR THE PLAINTIFF IS UNSUPPORTED BY THE MEDICAL EVIDENCE**

The Plaintiff alleges that the ALJ's finding that the Plaintiff retains the "RFC" to stand and/or walk for two to four hours out of an eight hour period of time without needing to alternate positions is in clear conflict with the medical evidence that the Plaintiff cannot stay on her feet for any length of time, requires a cane to ambulate, and must use a motorized scooter to walk any distance. The ALJ's RFC assessment found that the Plaintiff has no limitations as to continuous standing/walking. This is contrary to the medical evidence presented in this case.

Dr. Schultz wrote a prescription for the Plaintiff to have use of a motorized scooter for use to ambulate outside the house. The Plaintiff requires a cane to walk and has undergone multiple surgeries on each foot and an ankle surgery, all of which led to more treatment and multiple strong narcotic pain medications. [Tr. 294-341]. The ALJ also concluded that the Plaintiff could perform the two to four hours of walking without a sit/stand option which means the ALJ concluded that the Plaintiff could perform these tasks with normal breaks[2].

---

[2] Normal Breaks are not the same as the need for frequent changes of position. According to the SSA Procedures and Operations Manual, "normal breaks" means a brake in the morning, lunch, and a break in the afternoon. *Social Security Administration*, POMS DI 24510.005.

The Plaintiff is unable to stand or walk for any length of time because of her increased symptomology. [Tr. 299]. At a minimum, the Plaintiff would require the ability to change positions because she would not be able to stand for more than a very brief period of time and it is unlikely these short periods would rise to the level of two hours per day as is required of the full range of sedentary work.

Social Security Ruling 83-12 makes it clear that if a person "must alternate periods of sitting and standing," she "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work." The ALJ's RFC assessment is not supported by the medical evidence.

**2. THE ALJ ERRED IN DISCREDITING THE OPINIONS OF THE PLAINTIFF'S PHYSICIAN AND FAILING TO OBTAIN AN UPDATED MEDICAL OPINION AFTER THE PLAINTIFF'S SURGERY**

The Plaintiff contends the ALJ erred in discrediting the opinions of Dr. Schultz and the nurse practitioners and by failing to update the medical evidence after her ankle surgery which was performed months prior to the Commissioner's Decision.

"[T]he testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003), *citing Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The opinion of a treating physician is to be given substantial weight in determining disability. *Hillsman v. Bowen*, 804 F.2d

1179, 1181 (11th Cir. 1986); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986). The treating physician opinion is entitled to more weight than a non-treating physician. *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).

The opinion of a treating physician is given deference because the treating physician is the medical source "most able to provide a detailed, longitudinal picture of [plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. 404.1527.

In the Plaintiff's case, the ALJ failed to articulate good cause for not crediting Dr. Schultz's opinion. Dr. Schultz's report of August 25, 2006, set out that upon examination the Plaintiff suffers from tendonopathy of the feet bilaterally and tenderness in all aspects. He diagnosed her with peripheral neuropathy bilateral status post surgeries. Dr. Schultz is a board certified physician of the American Board of Physical Medicine and Rehabilitation, a Fellow of the American Academy of Disability Evaluating Physicians, and a certified member of the American Board of Independent Medical Examiners. The multiple surgeries that the Plaintiff had to her feet reasonably explains her difficulty to walk or stand on a continuous basis, as well as, Dr. Schultz's other limitations. If the Plaintiff's condition had improved as indicated by the ALJ, her medical team would not have started prescribing Dilaudin in addition to Percocet. Substantial evidence supports the medical findings presented by the Plaintiff's treating physician, Dr. Schultz.

    **3.    THE ALJ ERRED BY FAILING TO COMPLY WITH THE APPLICABLE REGULATIONS, CASE LAW, AND RULINGS GOVERNING THE ASSESSMENT OF PAIN**

The Plaintiff contends that the ALJ's analysis of the Plaintiff's pain and credibility is deficient because he failed to apply the proper legal standard and by improperly analyzing the required factors, such as her need to take Percocet and Oxycontin for pain.

The medical evidence of record shows that the ALJ did not properly evaluate the Plaintiff's complaints of pain. Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Congress has determined that a claimant will not be considered disabled unless she furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

The pain standard requires:

(1) evidence of an underlying medical condition and either

(2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or

(3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ in this case failed to analyze the following factors:   The potent narcotic medications that Plaintiff is taking and has been taking since her impairments began; minimized the Plaintiff's need for a motorized scooter/and or cane in order for her to be mobile at some level; and improperly discrediting the treating physicians' opinions that the Plaintiff was in such pain that the Percocet was not even strong enough to control it.  The record is replete with the multiple surgeries performed on her feet and then the surgery on her ankle when she ruptured her ligament.  These records support the Plaintiff's credibility regarding the pain alleged.   Substantial evidence supports the Plaintiff's severe pain and the resulting limitations.

**4.    THE APPEALS COURT ERRED BY FAILING TO REMAND THE PLAINTIFF'S CASE BASED ON NEW AND MATERIAL EVIDENCE**

The Plaintiff contends the Appeals Council erred in failing to remand the case to the ALJ despite the newly submitted evidence from Dr. Gene D. Mahaney confirming the diagnosis of reflex sympathetic dystrophy, bilaterally, in the lower extremities, in addition to peripheral neuropathy. [Tr. 342-403].   The Plaintiff was referred for an EMG.  Dr. Mahaney opined that the Plaintiff's symptoms and physical examination showed signs of a complex regional pain syndrome or RSD.  The Plaintiff was started on Relpax.  On March 23, 2007, she underwent a right lumbar sympathetic nerve block and restarted on Cymbalta.  On March 28, April 2, and April 10, 2007, Dr. Mahaney performed a left lumbar sympathetic nerve block and she was diagnosed with RSD.  On May 2, 2007, the Plaintiff underwent a right lumbar neurolytic RF sympathetic block and she was again diagnosed with RSD of the lower limbs.  On May 9, 2007, she underwent a left lumbar neurolytic RF sympathetic block. [Tr. 348-350, 380-383].

Dr. Mahaney's functional assessment form completed on May 9, 2007, reveals the Plaintiff to be suffering from pain, cold, heaviness and stinging of both her lower extremities along with anxiety and depression. The Plaintiff continued to have pain in both ankles, legs and feet and found her functional impairment was moderate. Dr. Mahoney opined the Plaintiff could only sit or stand fifteen minutes without a break and would need a job that permitted shifting positions and taking unscheduled breaks.

On June 6, 2007, and June 12, 2007, the Plaintiff underwent peripheral nerve blocks to her right ankle. Since the nerve block failed to help the Plaintiff was started on Klonopin. The Plaintiff continued to report pain and on August 1, 2007, examination revealed slow capillary refill of the right and left ankle and foot. The Plaintiff had tenderness in the calcaneous, plantar and navicular regions and in the peroneal tendons.

The evidence consisted of the treatment records of Dr. Mahaney as noted above. Although Dr. Mahaney diagnosed the Plaintiff with a "complex regional pain syndrome" and then changed the diagnosis to "reflex sympathetic dystrophy of the lower limbs", his notes show the same complaints that the Plaintiff reported to Dr. Schultz and Dr. Holberg . Dr. Mahaney's office notes do not restrict or limit the Plaintiff's activities, other than noting that her impairment interferes with "some daily activities." [Tr. 343, 351, 356]. This new medical evidence is repetitive of the evidence that the ALJ had previously considered. It does not show any major change in Plaintiff's condition or any further deterioration of the Plaintiff's condition. Therefore, the court of Appeals did not err by failing to remand the Plaintiff's case based on the new and material evidence presented above.

## III. CONCLUSION

There is a reasonable possibility that a proper analysis of the Plaintiff's exertional and non exertional impairments would change the administrative results. It is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to 42 U.S.C. § 405 (g) to allow the Administrative Judge to:

(1) Hold a supplemental hearing to reconsider the Plaintiff's claims in light of the findings of the physicians who treated the Plaintiff and to take additional evidence relevant to the Plaintiff's impairments and make new findings.

(2) The Clerk is directed to enter judgment accordingly and close the file.

**DONE and ENTERED** in Chambers at Fort Myers, Florida, this day of 18th day of June 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

All Counsel of Record